## KIDDER PRESS MANUFACTURING COMPANY v. FULTON BAG AND COTTON MILLS.

1. Where the contract declared on was an agreement by the plaintiff to invent and patent a machine to print, cut, and fold cloth, and the defendant was to purchase the patent at an agreed price, and the evidence introduced by the plaintiff on the trial showed the designing and construction of a machine of the character contemplated in the contract, but that the patent which had been secured in relation to the same did not cover that portion of the machine which did the printing, there was a fatal variance between the allegata and the probata, and there was no error in awarding a nonsuit.
2. Viewing the case in the light of both the evidence admitted and that which was offered and rejected, a nonsuit was the only proper result in the case.

Argued May 17, —Decided July 19, 1898.

Action on contract. Before Judge Reid. City court of Atlanta. November term, 1897.

The plaintiff alleged, that on or about June 1, 1891, Jacob Elsas, president of and acting for the defendant corporation, had an interview in Boston with the plaintiff's agent and vice-president, Francis Meisel, and sought to know whether plaintiff could design a machine to print cloth from the roll, in three or four colors, cut in given lengths, fold it, and sew it on one side and one end, to make flour sacks, all the operations of the machine to be automatic; and whether plaintiff would be willing

to assign the patent for such a machine if it could be secured, and what would be the price. Meisel replied that plaintiff could have such a machine designed, constructed, and patented; and Elsas made an offer of $2,500 to plaintiff, which was not then accepted, but Elsas left Boston and gave his address in New York, and asked for a reply letter. On June 7, 1891, plaintiff addressed and mailed to Elsas a letter to New York, as follows: "We have carefully considered the matter of supplying you with a machine as per interview, and will accept your offer of $2,500.00 to control the same, and in addition, you to pay the cost of building the first machine at 45 cents per hour for labor, and cost of materials. The cost of building the machine to be payable each thirty days as the work progresses; you to make any desired suggestions in regard to the machine, and to approve the designs and drawings, and to assume the responsibility of the success of the same for your purpose; we on our part to guarantee first-class workmanship according to design, and to serve you to the best of our ability in the invention and designs, and in perfecting the machine. The payment of $2,500.00 to become due and payable as soon as the machine is in successful operation in your establishment." This letter was received by Elsas in New York, and he wrote, signed, and mailed to plaintiff, on June 9, 1891, a reply, which was duly received by plaintiff, as follows: "Your acceptance of proposition to assign us inventions made in the work you are to do for us is satisfactory. As I am compelled to be at home this week and desire this work to be taken up at once, I authorize Mr. J. M. Bemis, who was present at our conference, to act for me, as he is familiar with my ideas, and may, if we are successful, use some of the machinery. Please give the work your immediate attention." The contract so entered into was afterwards modified between plaintiff and defendant, so as not to require the machine to sew the cloth on one side and end, because the necessary breaking of the thread which occurs in sewing, and the consequent delay, would cause unnecessary delay in the operation of the other part of the machine. This feature was ascertained in the course of construction, and was omitted by mutual consent. The machine was designed and built by plain-

tiff for defendant, in accordance with said contract, and the drawings, designs and construction were fully approved of by said Elsas for the defendant, as the same progressed, and the machine was fully completed on or about December 15, 1892, and fully tested in plaintiff's factory in Boston, in the presence of said Elsas, who examined it carefully, accepted it, and ordered it shipped to the defendant in Atlanta. The machine was placed in defendant's factory and put in operation by defendant about Jan. 1, 1893, and the operation was successful, and the defendant became liable to plaintiff for said sum of $2,500, in accordance with the terms of the contract. In accordance with said agreement latters patent of the United States for the invention of said machine were duly applied for in the patent office of the United States by Francis Meisel, April 19, 1893, and the patent was duly allowed and issued to him April 3, 1894; being serial number 517,653, and on May 15, 1895, plaintiff caused the patent to be duly assigned to defendant, and the assignment duly recorded. Defendant refused and still refuses to pay plaintiff the sum stated. By amendment the plaintiff alleged: It was not in contemplation in the contract between plaintiff and defendant that plaintiff should procure a patent for a machine combining the printing with the other parts of the machine. The printing part was to be combined with the other parts of the machine; but it was well known that a printing-machine was not patentable, and the matter in contemplation, so far as the obtainment and assignment of letters patent was concerned, was a machine for the cutting, folding, and piling cloth for the manufacture of bags.

The matter of evidence on which the case turns is stated in the opinion. The plaintiff excepted to the grant of a nonsuit, and to the following rulings: Plaintiff offered the following answer of F. Meisel to an interrogatory propounded to him: "I did obtain letters patent covering the principles of the machine in question." This was rejected as an expression of opinion. Plaintiff also offered the following answer of the same witness, in response to an interrogatory: "I consider that $2,500 for my time spent on the machine, and the right for controlling the same, is very small. There are a number of

motions in the machine which require a great deal of study." This was rejected as irrelevant. Plaintiff also offered the following question to and answer of the same witness: Q. "State whether or not, in your opinion, the letters patent issued to you from the patent office of the United States, No. 517,653, for machine for cutting, folding, and piling cloth, paper, and other fabrics, controlled the machine manufactured by the plaintiff for the defendant, concerning which the matters in controversy in the above case are pending; and if you say that said letters do control said machine, give fully your reasons for so stating, and the facts on which you base your opinion." A. "The letters patent, No. 517,653, issued to me, control the machine in question. The reasons for my opinion are, that if the cutting and folding machine were detached from the printing-press, the cloth could not be cut and folded at the same time as, or immediately after it was printed, and would therefore necessitate two operations. The same holds good if the printing-press was going independently of the cutting and folding machine, as in that case the printing-press would be of practically no use without material alterations being made thereon; and even if such alterations could be made thereon, it could only be used as a printing-press." This was rejected as incompetent. And plaintiff tendered in evidence a paper which was shown to have been sent by the defendant to J. M. Bemis, and by him delivered to the plaintiff company, F. Meisel having testified that it was delivered to him by J. M. Bemis, and W. R. Hammond having testified that Jacob Elsas admitted while on the stand on a former trial of this same case that he had sent it to J. M. Bemis for the purpose of being handed to the plaintiff company, as follows: "Atlanta, Ga., June 15, 1891. Kidder Press Manufacturing Co., Boston.: Referring to your letter of June 7, naming terms under which your company will proceed to build certain machines, &c., it is further agreed that all patent rights or letters of patent that may be issued under this agreement are to be assigned by the Kidder Press Mfg. Co. over to Jacob Elsas immediately after being issued; but the assigning of such patents or letters of patent does not in any way interfere with the agreement that the Kidder Press Mfg. Co. have the right or

preference of building all machines that may be ordered by Jacob Elsas under said patents for the term of seventeen years, providing the Kidder Press Mfg. Co. will build said machines at equal prices and terms that other good and responsible machinists may bid to get the work. And it is still further agreed that Jacob Elsas may at his option call a halt on all or any work under this agreement, cancel, quit, and close all its provisions by paying said Kidder Press Mfg. Co. 45 cents per hour for any work done up to the time of canceling or closing. However said canceling or closing might be only temporary, and to give the said Elsas further time for thought and study, and can again be taken up and pushed ahead at the option of the said Elsas." This was rejected as irrelevant.

*W. R. Hammond*, for plaintiff.
*Glenn, Slaton & Phillips*, for defendant.

SIMMONS, C. J.   1. The contract declared on in the plaintiff's petition was one whereby the plaintiff was to design, construct, and obtain letters patent upon a machine which would automatically perform three separate and distinct things, to wit, print cloth in three or four colors, cut it into specified lengths, and fold it. If the machine designed was satisfactory to the defendant, it agreed to pay for the letters patent $2,500. The meaning of the contract is, in our opinion, that the plaintiff was to design, construct, and patent a machine combining the three elements specified, and that the defendant was to pay for the letters patent on such a machine. The plaintiff's evidence shows that the machine was designed and constructed according to contract; that the stipulated compensation was paid for building it; but that plaintiff patented, not the entire machine or all of its elements, but only two of these elements, the patent being for "An alleged new and useful improvement in Machine for Cutting, Folding, and Piling Cloth, Paper, or Other Fabrics." The evidence also shows that the plaintiff did not even apply for a patent on the entire machine or combination. It is claimed by the plaintiff that it was impossible for it to patent the printing-machine, as such machine was old and no material part novel or patentable. This, in our opinion, does not relieve plaintiff of its difficulty; for it contracted to obtain letters

patent upon a machine of which the device for printing was a part, and it can not recover upon the contract without showing a compliance with it. The patent obtained may be such as to protect the defendant, and do it just as well as the one which the defendant contracted for; but the defendant can still stand upon the contract and demand that it be complied with before it be forced to pay for the patent. It can legally decline to accept the letters patent as a compliance with the contract, because they do not cover the machine and are not what it contracted for. If plaintiff could not procure the patent on the portion of the machine which did the printing, this was its misfortune. It should not have made a contract to do so. Having made the contract, it can not enforce it without a compliance on its part. See Westervelt v. Fuller Mfg. Co., 13 Daly, 352. It will be seen that there was a fatal variance between the petition and the evidence as to the compliance of the plaintiff with the contract. The court, therefore, did not err in granting a nonsuit.

2. Under our view of the law of the case, if the rejected evidence had been admitted it could not have changed the result.

*Judgment affirmed. All the Justices concurring.*